UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TIKO JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-912 (RBW) |
| | ) | |
| KILOLO KIJAKAZI,[1] in her official capacity as the Acting Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

The plaintiff, Tiko Jackson, brings this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c), against the defendant, Kilolo Kijakazi, the Commissioner of Social Security, seeking judicial review of the decision by the administrative law judge ("ALJ") denying her application for disability insurance benefits and supplemental social security income. See Complaint ("Compl.") ¶¶ 4–6.  Currently pending before the Court are the plaintiff's motion for judgment of reversal, see Motion for Judgment of Reversal ("Pl.'s Mot."), ECF No. 13, and the defendant's motion for judgment of affirmance, see Defendant's Motion for Judgment of Affirmance and in Opposition to Plaintiff's Motion for Judgment of Reversal ("Def.'s Mot."), ECF No. 14.  Upon careful consideration of the parties' submissions,[2] the Court concludes for

---

[1] Kilolo Kijakazi is the current Acting Commissioner of Social Security, and she is therefore substituted for Nancy Berryhill as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum in Support of Plaintiff's Motion for Judgment of Reversal ("Pl.'s Mem."), ECF No. 13-1; (2) the Defendant's Memorandum in Support of Her Motion for Judgment of Affirmance and in Opposition to Plaintiff's Motion for Judgment of Reversal ("Def.'s Mem."), ECF No. 14; (3) the Plaintiff's Opposition to Defendant's Motion for Judgment of Affirmance and Reply to Defendant's Opposition to Plaintiff's Motion for Judgment of Reversal ("Pl.'s Reply"), ECF No. 19; and (4) the administrative record ("App."), ECF Nos. 10-1 to 10-10.

the following reasons that it must grant the plaintiff's motion, deny the defendant's motion, reverse the ALJ's decision, and remand to the agency for further proceedings.

## I. BACKGROUND

### A. Statutory and Regulatory Framework

Pursuant to the Social Security Act (the "Act"), an individual is entitled to disability benefits if he or she is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]

42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is entitled to benefits, an ALJ "gathers evidence, holds a hearing, [and] takes testimony," which may include testimony by a vocational expert. Kim M. v. Kijakazi, Civil Action No. 20-cv-2072 (GMH), 2021 WL 4033060, at *1 (D.D.C. Sept. 3, 2021). The ALJ then "performs [a] five-step, sequential inquiry of the [claimant's] disability claim[,]" as set forth in 20 C.F.R. § 404.1520. Id.

> First, the claimant must show that [he or] she is not presently engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). Second, [he or] she must demonstrate that [he or] she has a "severe impairment" that "significantly limits [his or her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). Third, the claimant must show that [his or] her impairments or combination of impairments "meets or equals" one of the listings at 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 416.920(a)(4)(iii). If they do, then the claimant is deemed disabled, and the inquiry ends. Id. If not, the ALJ must proceed to the fourth step, which requires the ALJ to determine the claimant's residual functional capacity and consider whether, in light of that capacity, the claimant can still perform work that [he or] she has done within the past [fifteen] years (if the claimant has indeed done such work). See 20 C.F.R. §§ 416.920(a)(4)(iv), 416.960(b)(1). Fifth, if the claimant's capacity indicates that [he or] she cannot engage in past work, then the burden shifts to the [agency] to prove that the claimant's capacity, age, education, and past work experience indicate that [he or] she is able to perform "other work" that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v); Butler, 353 F.3d [992,] 997[ (D.C. Cir. 2004)].

Mitchell v. Kijakazi, No. 19-cv-2560 (DLF), 2021 WL 5310541, at *2 (D.D.C. Nov. 15, 2021). "Through the first four steps of this inquiry, the claimant bears the burden of proof[;]" however, at step five, "the burden shifts to the [agency] to identify specific jobs sufficiently available in the national economy that the claimant can perform." Callahan v. Astrue, 786 F. Supp. 2d 87, 89 (D.D.C. 2011).

**B.     The Plaintiff's Disability Claims and Procedural History**

This case concerns two applications filed by the plaintiff: (1) an application under Title II and Part A of Title XVIII for a period of disability and disability insurance benefits, filed on March 26, 2014, see App. at 207; and (2) an application for supplemental security income under Title XVI, filed on April 9, 2014, see id. at 209. Both applications alleged that the plaintiff was disabled as of August 31, 2010. See id. at 209, 218.

The plaintiff's applications were initially denied by the defendant on June 4, 2014. See id. at 115–21. On July 29, 2014, the plaintiff requested reconsideration of the defendant's decision, see id. at 122–27, and thereafter the defendant "thoroughly evaluated" the evidence, "includ[ing] the medical evidence and the additional information received since the original decision[,]" and "f[ou]nd that the previous determination denying [the plaintiff's] claim was proper under the law[,]" id. at 128. See id. at 128–34 (notifying the plaintiff of the defendant's determination that her previous denials were proper).

On February 12, 2015, the plaintiff submitted a request for a hearing before an ALJ. See id. at 135. In support of her applications, the plaintiff submitted to the ALJ the documentation

that had been previously considered by the defendant, as well as additional documentation that post-dated the agency's determinations.³  See generally id. at 228–877.

On March 7, 2017, the ALJ held a hearing to consider the plaintiff's applications, see id. at 34, at which the plaintiff, see id. at 39–57, and a vocational expert, Cynthia Jenkins, see id. at 59–69, testified.  The plaintiff testified that, although she had not worked since 2010, she had previously worked (1) at the Department of Recreation; (2) as a mail handler for the United States Post Office; (3) as a cashier at Marvelous Market, Inc., and the Washington Hospital Center; and (4) for the United States Census Bureau.  See id. at 41–42.  The plaintiff testified that she had experienced pain in her right hip for "some years" due to a gunshot wound and the pain had become constant and worsened in the last "two years."  Id. at 44.  She stated that her pain had worsened in late 2015, when she "had gotten evicted," which resulted in her "moving and moving," without "a place to stay."  Id. at 45–46.  This resulted in her being "constantly on [her] feet, going place to place" and "carrying bags, so it was like it was putting extra weight on her."  Id. at 46.  Even after decreasing her activity, her pain level did not subside.  See id.  The

---

³ This information is part of the administrative record developed in this case.  See App. at 228–38 (April 14, 2014 disability field report); id. at 241–50 (April 17, 2014 work history report completed by the plaintiff); id. at 252–61 (April 17, 2014 function report completed by the plaintiff); id. at 273–80 (October 23, 2014 function report completed by the plaintiff); id. at 281–93 (February 11, 2015 disability report completed by the Neighborhood Legal Services Program on behalf of the plaintiff); id. at 308–09 (October 18, 2015 claimant's work background form completed by the plaintiff); id. at 310–13 (claimant's recent medical treatment form completed by the plaintiff); id. at 320–34 (Howard University Hospital emergency records, dated February 14, 2014, to March 6, 2014); id. at 335–38 (Howard University Orthopaedics and Rehabilitative Services treatment records, dated March 6, 2014, to March 20, 2014); id. at 339–53 (Howard University Division of Orthopaedics Surgery treatment records, dated March 6, 2014, to August 5, 2014); id. at 355–423 (Howard University Hospital records, dated February 14, 2014, to December 9, 2015); id. at 424–47 (George Washington University Hospital records, dated December 2, 2015, to February 21, 2016); id. at 448–55 (Howard University Hospital Endocrine treatment records, dated May 2, 2016, to June 23, 2016); id. at 456–72 (Howard University Hospital records, dated February 20, 2015, to April 30, 2015); id. at 473–96 (Howard University Hospital records, dated July 17, 2014, to May 16, 2016); id. at 497–523 (Howard University Hospital records, dated May 2, 2016, to June 23, 2016); id. at 524–50 (Howard University Sleep Disorder Center treatment records, dated October 28, 2016, to January 19, 2017); id. at 551–85 (Howard University Otolaryngology treatment records, dated July 17, 2014, to January 19, 2017); id. at 586–631 (Howard University Hospital records, dated May 2, 2016, to January 18, 2017); id. at 632–707 (Howard University Hospital outpatient treatment records, dated April 30, 2015, to January 24, 2017); id. at 708–37 (Howard University Hospital records, dated July 26, 2016, to January 24, 2017); id. at 738–877 (Howard University Hospital treatment records, dated February 19, 2014, to January 18, 2017).

plaintiff testified that, from June 2016 through the date of the hearing, she was staying with her daughter and, during the day, she would spend "[a]bout four to five hours" laying down, because that was the most comfortable position. Id. at 48–49.

The plaintiff stated that, "when [she] st[oo]d, [she] limp[ed] extra hard" and her leg was "always stiff" and in "constant pain." Id. at 43. She testified that she was able to stand without a cane "[f]or a short period of time[,]" i.e., "at least five minutes[,]" but could stand with a cane for "at least ten minutes[.]" Id. at 44–45. According to the plaintiff, her ability to stand had been limited for "[a]t least a year and a half." Id.

Regarding her walking ability, the plaintiff testified that she was able to walk, using her cane, "from 14th Street to [her doctor's office on] Georgia Avenue," which is, "give or take, three to four blocks, long blocks." Id. at 46. She stated that she had begun using a cane more starting in September 2016 because, "[w]hen [she] was [walk]ing back and forth to the doctor['s office], [she] was aching real bad." Id. at 47.

Regarding her sitting ability, the plaintiff testified that she was able to sit for "at least five minutes[,]" but then she "usually la[id] down" "[b]ecause [she] fe[lt] like [she] ha[d] to stretch it out." Id. at 48. According to the plaintiff, "most of the time[, she had] to lay back and try to relax [her] back, because it's like pain shooting through [her] back" and radiating into her legs. Id. at 47. She stated that this pain had gone on since "at least last year." Id. at 48. She stated that, "if [she was] in a comfortable position, or somewhere comfortable to sit, [she] probably c[ould] sit longer than [ ] five minutes[,]" and probably "at least a half an hour to an hour, . . . without any pain[,]" although she would "still move" because she would "try to get comfortable and try to release that pain." Id. at 49. The plaintiff testified that, once sitting became too painful, she would "get up and try to walk it off, and then try to sit—and then sit

5

back down, and see if that pain subside[d]. And sometimes it d[id]n't. And then [she would] lay down and stretch it out." Id. She stated that, in total, she would be able to make it "about an hour" before she needed to lay down and, once she laid down, she would need to remain there for about "three to four hours." Id. at 50. According to the plaintiff, her back pain also prevented her from bending down because "you're supposed to use both of your feet, bend with your knees, [but her] knees don't work" and when she "bend[s], it hurts, because [she] use[s her] right leg more to bend, to pick up things." Id. at 51–52. The plaintiff also testified that she had issues with her left knee, whereby "it's like [her] kneecap [wa]s shifting" and she "hear[d] [ ] cracking, crunching, if [she went] up and down the steps, if [she] tr[ied] to bend, [she] just hear[d] the cracking and crunching." Id. at 52.

On May 30, 2017, based on the record before her, the ALJ concluded that the plaintiff was not entitled to benefits. See id. at 19. Regarding the first three steps of § 404.1520, the ALJ concluded that that (1) the plaintiff "has not engaged in substantial gainful activity since August 31, 2010, the alleged onset date[,]" id. at 12, therefore the inquiry proceeded past the first step; and (2) she has the following severe impairments: "degenerative joint disease and deformity of the right hip joint secondary to prior gunshot injury; degenerative/discogenic disease of the lumbar spine; and patellofemoral syndrome of the left knee[,]" id., therefore the inquiry proceeded past the second step; and (3) she "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[,]" id. at 13, therefore the inquiry proceeded past the third step.

Regarding the fourth and fifth steps under § 404.1520, which address the plaintiff's "residual functional capacity[,]" the ALJ concluded that the plaintiff

> has the residual functional capacity to perform light work . . . , except she can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds.

> She can occasionally push/pull with the right lower extremity. She can occasionally balance, stoop, kneel, crouch, and crawl. She can have occasional exposure to extreme cold and no exposure to vibration and hazards.
>
> Light work involves lifting or carrying [twenty] pounds occasionally and [ten] pounds frequently, standing or walking about [six] hours in an [eight]-hour workday, and sitting about [six] hours in an [eight]-hour workday.

Id. at 14. Based on her finding of this residual functional capacity, the ALJ determined that the plaintiff "[wa]s capable of performing past relevant work as a census enumerator, cashier, and mail handler[,]" see id., and therefore the ALJ found the plaintiff not to be disabled at the fourth step. Id. at 18. "In the alternative," the ALJ also found the plaintiff not to be disabled at the fifth step, finding that, "considering the [plaintiff's] age, education, work experience, and residual functional capacity, there [we]re other jobs that exist in significant numbers in the national economy that the [plaintiff] also c[ould] perform[.]" Id. Therefore, the ALJ determined that "[a] finding of 'not disabled is [ ] appropriate[.]" Id. at 18.

## II. STANDARD OF REVIEW

Under the Act, a claimant may seek judicial review of an ALJ's decision by a federal district court. See 42 U.S.C. § 405(g). A district court has discretion "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing." Faison v. Colvin, 187 F. Supp. 3d 190, 193 (D.D.C. 2016) (internal quotation marks omitted). However, the "district court's review of the [ALJ's] findings of fact is limited to whether those findings are supported by substantial evidence[,]" Dunham v. Astrue, 603 F. Supp. 2d 13, 17 (D.D.C. 2012), meaning such relevant evidence as "a reasonable mind might accept as adequate to support a conclusion[,]" Butler, 353 F.3d at 999. This standard "requires more than a scintilla, but can be satisfied by something less than a preponderance of evidence[,]" id. (internal quotation marks

7

omitted), and "is highly deferential to the agency fact-finder[,]" Jeffries v. Astrue, 723 F. Supp. 2d 185, 189 (D.D.C. 2010) (internal quotation marks omitted).  However, the ALJ must "ha[ve] analyzed all evidence and [ ] sufficiently explained the weight he [or she] has given to obviously probative exhibits." Lane-Rauth v. Barnhart, 437 F. Supp. 2d 63, 65 (D.D.C. 2006) (internal quotation marks omitted).  When the ALJ rules against a claimant, the claimant "bears the burden of demonstrating that the [ALJ's] decision [was] not based on substantial evidence or that incorrect legal standards were applied." Cooper v. Berryhill, No. 16-cv-1671 (DAR), 2017 WL 4326388, at *3 (D.D.C. Sept. 28, 2017) (internal quotation marks omitted).

### III.   ANALYSIS

The plaintiff argues that the Court should either reverse the ALJ's decision or remand this case to the defendant because (1) the ALJ erroneously "assessed the plaintiff's residual functional capacity[,]" Pl.'s Mem. at 3; and (2) the ALJ "failed to perform the proper analysis for determining that [the p]laintiff was capable of performing her past[ ]relevant work[,]" id. at 10. In response, the defendant argues that "[t]he ALJ's decision should be affirmed because substantial evidence of record supports [the ALJ's] determination that [the p]laintiff was not disabled under the Act." Def.'s Mem. at 6.  For the following reasons, the Court will reverse the ALJ's decision and remand this case to the defendant for further proceedings.

**A.    The Plaintiff's Challenge to the ALJ's Residual Functional Capacity Determination at Step Four of 20 C.F.R. § 404.1520**

First, the plaintiff argues that the ALJ erroneously "assessed [her] residual functional capacity[,]" Pl.'s Mem. at 3, by (1) "fail[ing] to [provide] a narrative discussion setting forth how the evidence supported each conclusion," id. at 6; (2) "erroneously disregard[ing] the opinions of the State Agency physicians who evaluated the [p]laintiff's claim on behalf of the [defendant,]"

8

id. at 8; and (3) incorrectly "determin[ing] that the [p]laintiff did not require the use of a cane[,]" id. at 9.[4]  The Court will address each of the plaintiff's arguments in turn.

### 1. The Plaintiff's Argument that the ALJ Did Not Provide an Adequate Narrative Discussion of the Evidence

The plaintiff argues that the ALJ "failed to properly assess [her] limitations as required pursuant to Social Security Ruling [("SSR")] 96-8p[,]" Pl.'s Mem. at 4, because the ALJ "failed to set forth a narrative discussion" of "the evidence[,]" id. at 6.[5]  In response, the defendant

---

[4] The plaintiff also argues that the ALJ improperly required her to "provide objective evidence to substantiate the intensity, persistence, and limiting effects of her subjective complaints[,]" Pl.'s Mem. at 16, and cites Butler v. Barnhart, 353 F.3d 992 (D.C. 2004), for the proposition that "[i]n determining [an] individual's credibility, the ALJ 'must consider the entire case record' and may not disregard the individual's statements about the intensity and persistence of her pain 'solely because they are not substantiated by objective medical evidence[,]'" Pl.'s Mem. at 16 (quoting Butler, 353 F.3d at 1005).  However, Butler addressed the interpretation of SSR 96-7p, see Butler, 353 F.3d at 1005 (quoting from and discussing SSR 96-7p), which was rescinded by SSR 16-3p, see SSR 16-3p at *1 ("We are rescinding SSR 96-7p . . . and replacing it with this [r]uling.").  Thus, Butler has no applicability to this case.

Moreover, the ALJ's decision demonstrates that the ALJ did not erroneously require the plaintiff to provide objective evidence to substantiate her subjective complaints.  Rather, the ALJ evaluated the plaintiff's symptoms in light of the evidence in the record, which included comparing the plaintiff's reported symptoms to the record evidence, as is required by the governing regulations and SSR 16-3p.  See, e.g., SSR 16-3p at *8 ("Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms[.]"); 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.").  Accordingly, the Court disagrees with the plaintiff that the ALJ improperly required her to provide objective evidence to substantiate her subjective complaints.

[5] The parties also dispute whether an explicit "function-by-function assessment" is needed, or whether a narrative discussion of the evidence suffices to meet the ALJ's obligation under SSR 96-8p.  See Pl.'s Mem. at 6 ("Thus, the [ALJ] is required to perform a function-by-function assessment of a claimant's ability to perform the physical and mental demands of work."); Def.'s Opp'n at 7 ("Rather than performing an explicit function-by-function analysis, a narrative discussion of the relevant evidence has been found to be sufficient in explaining the [residual functional capacity] assessment.").  In Banks v. Astrue, 537 F. Supp. 2d 75 (D.D.C. 2008), another member of this court noted that "[w]hile [the District of Columbia] Circuit [ ] has not specifically addressed whether the ALJ must undertake a specific discussion of each of the seven functions, some courts have found that an articulation of the function-by-function analysis is not required, particularly for capacities for which no limitation is alleged[,]" whereas "[o]ther courts, including one in this district have determined that failure to consider the seven functional factors renders a decision not supported by substantial evidence."  Id. at 85 (emphasis in original).  The court in Banks "concur[red] that a written function-by-function analysis is not required" because "[a]lthough the language of SSR 96-8p requires that the ALJ's [residual functional capacity] assessment 'must address . . . the remaining exertional . . . capacities of the individual,' this does not require written articulation of all seven strength demands[,]" particularly "where . . . the ALJ provided a thorough narrative discussion of [the claimant's] limitations."  Id.  However, because the Court concludes that the ALJ's narrative discussion was insufficient, see infra Sections III.A.1–3, it need not address this

(continued . . .)

argues that (1) "the ALJ adequately explained her [residual functional capacity] assessment that [the p]laintiff could perform a reduced range of light work" because the ALJ "discussed [how the p]laintiff's treatment ha[d] been routine and conservative overall" and "[i]f a physical impairment can be controlled through medication and treatment, it is generally not considered disabling[;]" and (2) "[t]he ALJ also sufficiently discussed the clinical findings that supported her conclusion[.]" Def.'s Mem. at 8. For the following reasons, the Court agrees with the plaintiff that the ALJ's decision does not meet the requirements of SSR 96-8p.

SSR 96-8p states that "[t]he [residual functional capacity] assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996). This assessment

> include[s] a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing [a plaintiff's residual functional capacity], the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., [eight] hours a day, for [five] days a week, or an equivalent work schedule)[ ], and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

Id. at *7 (underlines added). Thus, SSR 96-8p requires that "the ALJ build an accurate and logical bridge from the evidence to [her] conclusion so that . . . [the] reviewing court[] [ ] may assess the validity of the agency's ultimate findings." Lane-Rauth, 437 F. Supp. 2d at 67 (internal quotation marks omitted).

---

(. . . continued)
dispute because the ALJ's decision remains unsupported by substantial evidence even if the defendant is correct that only a narrative discussion is required.

Here, the Court is unable to conclude that the ALJ built the requisite "logical bridge[,]" id., between the evidence and her finding regarding the plaintiff's residual functional capacity. In her discussion of the plaintiff's residual functional capacity, the ALJ begins by briefly summarizing the plaintiff's complaints. See App. at 15. The ALJ then concludes that, although "the [plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms, [the plaintiff's] statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id. Next, the ALJ summarizes the medical record. See id. at 15–16; see, e.g., id. at 15 ("The [plaintiff] was referred to physical therapy. She exhibited normal gait, strength, range of motion, and sensation during a June 2014 primary care appointment." (citations omitted)). Finally, the ALJ explains her conclusion to give little weight to three pieces of evidence: (1) the plaintiff's statements about "the intensity, persistence[,] and limiting effects of [her] symptoms[,]" id. at 16; (2) the State agency medical experts' recommendations, see id.; and (3) the "Owestry disability index questionnaires" completed by the plaintiff, id. at 17.

At no point does the ALJ "describ[e] how the evidence supports[,]" SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996), her residual functional capacity determination. See generally App. at 14–17. Although the ALJ summarizes the plaintiff's medical history, see id. at 15–16, the summary alone is insufficient, see Lane-Rauth, 437 F. Supp. 2d at 67 (holding that the ALJ's residual functional capacity determination explanation was not supported by substantial evidence when it "spen[t] three pages simply listing the plaintiff's entire medical history and then conclusively stating that based on the evidence, including the testimony at the hearing, the [ALJ] finds that [the plaintiff] retain[ed] the residual functional capacity to do sedentary work"

11

(internal quotation marks omitted)). Furthermore, although the ALJ's residual functional capacity determination contains numerous specified capacities, such as the plaintiff's ability to "occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds[,]" App. at 14, the decision never connects the summarized medical evidence to any of these capacities, see id. at 14–17. Moreover, the ALJ's explanation of the reasons why she afforded little weight to the plaintiff's testimony, the State agency disability experts' opinions, and the Owestry questionnaires, see id. at 16, does not explain how the evidence on which the ALJ did rely supports her particular findings, e.g., her conclusion that the plaintiff could "occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolders" or her conclusion that the plaintiff could "occasionally push/pull with the right lower extremity[,]" id. at 14. Accordingly, the Court is "left guessing as to how the ALJ evaluated probative material," Carnett v. Colvin, 82 F. Supp. 3d 1, 7 (D.D.C. 2015).

"Because the ALJ simply listed all of the evidence without clearly explaining which particular pieces of evidence led [her] to [her] conclusion, there is no logical bridge, and no thorough discussion and analysis." Id. (internal quotation marks omitted); see SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (providing that an ALJ must "describ[e] how the evidence supports each conclusion"). Accord Bryant v. Saul, 2019 WL 6619760, at *4 (D.D.C. Nov. 18, 2019) ("It is generally not sufficient for an ALJ to specify a[ residual functional capacity] and merely follow it with a recitation of the testimony and a summary of the medical history, no matter how thorough that recap is." (internal quotation marks and alterations omitted)). Accordingly, the Court concludes that the ALJ has failed to explain how her residual functional capacity determination is supported by substantial evidence. See Brown v. Colvin, 219 F. Supp. 3d 121, 128 (D.D.C. 2016) (remanding to the agency where the ALJ's residual functional

12

capacity determination was only supported by (1) "a summary of [the p]laintiff's allegations of [ ] impairments" and (2) a credibility determination of the state agency disability expert's opinion).

The defendant presents two arguments as to why the ALJ's decision should be affirmed. First, the defendant argues that the ALJ's residual functional capacity determination is supported by substantial evidence because the ALJ "discussed that [the p]laintiff's treatment has been routine and conservative overall" and "[i]f a physical impairment can be controlled through medication and treatment, it is generally not considered disabling[.]" Def.'s Mem. at 8. The defendant is correct that "if a physical impairment . . . can be controlled through medication and treatment, it is generally not considered disabling[.]" Davis v. Berryhill, 272 F. Supp. 3d 154, 179 (D.D.C. 2017); see Def.'s Mem. at 8. However, although the ALJ states that the plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual" because "[h]er treatment has been routine and conservative overall[,]" id. at 16, the ALJ does not connect the type of treatment received by the plaintiff to any of the components of the ALJ's residual functional capacity determination, see id. at 14–17. Accordingly, the Court is still "left guessing[,]" Carnett, 82 F. Supp. 3d at 7, as to how the ALJ has arrived at this particular residual functional capacity finding. See also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (providing that an ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved").

Second, the defendant argues that "[t]he ALJ also sufficiently discussed the clinical findings that supported her conclusion to enable [ ] meaningful judicial review of her finding[,]" citing "radiographic imaging show[ing] marked right hip deformity and facet arthrosis at L4-5 and L5-S1, but . . . no compression of the spinal cord or nerve roots[;]" and a "decreased range

13

of motion, slight reduced [ ] strength, and an occasionally antalgic gait" that conflicted with "multiple physical examinations [that] showed normal gait, strength, range of motion and sensation." Def.'s Mem. at 8. However, as discussed above, although the ALJ summarized this record evidence, she did not provide any discussion logically or otherwise linking this evidence to her residual functional capacity determination. See App. at 14–17.

Accordingly, because the ALJ did not provide the requisite "narrative discussion describing how the evidence supports each [of her] conclusion[s]," SSR 96-8p, 1996 WL 374184, at *7, the Court concludes that it must reverse the ALJ's residual functional capacity determination as to the ALJ's narrative discussion of the evidence.

2. **The Plaintiff's Argument that the ALJ Failed to Adequately Explain the ALJ's Conclusions Regarding the State Agency Medical Experts' Opinions**

Next, the plaintiff argues that the ALJ erroneously "disregarded the opinions of the State Agency physicians[, Dr. Jacqueline McMorris and Dr. Walter Goo,] who evaluated the [p]laintiff's claim on behalf of the [defendant]." Pl.'s Mem. at 8. In response, the defendant argues that the plaintiff "inappropriately asks this Court to reweigh [Dr. McMorris's and Dr. Goo's] opinion[s,]" which the Court may not do, and that "[t]he ALJ properly afforded little weight to [the] opinions . . . that [the p]laintiff could perform sedentary work because their opinions were not consistent with the medical evidence of record." Def.'s Mem. at 9. Because the ALJ's decision does not provide the requisite level of explanation as to why she disregarded Dr. McMorris's and Dr. Goo's opinions, the Court concludes that it must also reverse the ALJ's decision to disregard the two experts' opinions.

Regarding the ALJ's decision to accord little weight to Dr. McMorris's and Dr. Goo's opinions, the ALJ stated that they

> determined on review of the record and on reconsideration of the evidence that the [plaintiff] was capable of performing sedentary work except she was limited

14

>    in pushing/pulling with the right lower extremity. She could occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, but never balance or climb ladders, ropes, or scaffolds. She needed to avoid concentrated exposure to extreme cold, moderate exposure to vibration, and all exposure to hazards. While the State agency disability experts are not treating or examining doctors, they are experts in all phases of disability evaluation and well-qualified to render an opinion regarding the nature and severity of the [plaintiff's] impairments. However, their conclusions of physical functioning are not found to be consistent with the medical evidence of record, including treatment notes and radiographic results, and have therefore been afforded little weight. Although the [plaintiff] limped on some occasions, her gait was noted to be normal on multiple occasions and the record did not consistently reflect the use of any assistive device.

App. at 16.

The Court concludes that this explanation is unsupported by substantial evidence. The ALJ disregarded the experts' opinions for two reasons: (1) "their conclusions of physical functioning are not found to be consistent with the medical evidence of record, including treatment notes and radiographic results[,]" and (2) "[a]lthough the [plaintiff] limped on some occasions, her gait was noted to be normal on multiple occasions and the record did not consistently reflect the use of any assistive device." Id. Regarding the first reason, the ALJ provided no indication as to which "medical evidence of record, [ ] treatment notes[,] and radiographic results[,]" id., were inconsistent with the experts' opinions, leaving the Court with no opportunity to review the ALJ's reasoning for disregarding the experts' opinions. See Carnett, 82 F. Supp. 3d at 7 (reversing when the court was "left guessing as to how the ALJ evaluated probative material"). Turning to the ALJ's second reason, the Court concludes that the ALJ's explanation is insufficient because it fails to provide any explanation as to why the fact that "the record did not consistently reflect the use of any assistive device[,]" App. at 16, means that the state agency's medical experts' opinions should be disregarded. See id. at 14–17; see also SSR 96-8p, 1996 WL 374184, at *7 (noting that, "[i]f the [residual functional capacity] assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the

15

opinion was not adopted"); Brown, 219 F. Supp. 3d at 128 (remanding to the agency when the ALJ merely summarized the medical evidence and then stated, "Based on this evidence, the undersigned gives little weight to the opinion of [the] State agency psychological consultant").

Despite these omissions, the defendant first argues that "the ALJ noted that the opinions of Drs. McMorris and Goo were inconsistent with the multiple physical examinations showing normal gait, strength, range of motion, and sensation[,]" citing a number of pages from the administrative record. Def.'s Mem. at 9 (citing App. at 426–27, 431–32, 443–44, 745, 781–82, 786, 791). Although it is certainly possible that these pages reflect the evidence to which the ALJ intended to refer by referencing "treatment notes and radiographic results[,]" App. at 16, "the Court may only consider the grounds proffered by the agency in its decision[,] for post hoc rationalizations do not suffice[,]" Espinosa v. Colvin, 953 F. Supp. 2d 25, 33 (D.D.C. 2013). Therefore, the Court cannot accept the defendant's representation as to the evidence that it asserts the ALJ considered. And, because the ALJ's decision does not provide any specific identification of the "treatment notes and radiographic results[,]" App. at 16, that the ALJ generally referenced, see id., the Court is "left guessing[,]" Carnett, 82 F. Supp. 3d at 7, as to which "treatment notes and radiographic results[,]" App. at 16, the ALJ considered in assigning little weight to Dr. McMorris's and Dr. Goo's opinions.

Second, the defendant argues that the plaintiff "inappropriately asks th[e] Court to reweigh [Dr. McMorris's and Dr. Goo's] opinion[s.]" Def.'s Mem. at 9. As the defendant correctly notes, see id., "a court may not determine the weight of the evidence, nor substitute its judgment for that of the [defendant] if [the defendant's] decision is based on substantial evidence[,]" Guthrie v. Astrue, 604 F. Supp. 2d 104, 112 (D.D.C. 2009). However, the defendant mischaracterizes the plaintiff's argument. The plaintiff argues that the ALJ failed to

16

adequately explain her assignment of little weight to Dr. McMorris's and Dr. Goo's opinions, not that the ALJ should have weighed the evidence differently.  See, e.g., Pl.'s Mem. at 7–8 (arguing that the ALJ "has failed to identify a single inconsistency between the opinions of [Dr. McMorris and Dr. Goo] and the treatment notes" or "the radiographic results").  And, as it is required to, the Court has merely "determin[ed] whether the ALJ, acting for the [defendant], 'has analyzed all the evidence and has sufficiently explained the weight [s]he has given to obviously probative material.'"  Guthrie, 604 F. Supp. 2d at 112 (quoting Simms v. Sullivan, 877 F.2d 1047, 1050 (D.C. Cir. 1989)); see supra Sections III.A.1–2; see infra Section III.A.3.

Accordingly, the Court concludes that it also must reverse the ALJ's residual functional capacity determination regarding the ALJ's explanation of her assignment of little weight to Dr. McMorris's and Dr. Goo's opinions, and remand to the agency for further proceedings.

### 3. The Plaintiff's Argument that the ALJ Did Not Adequately Explain the ALJ's Conclusion that the Plaintiff Did Not Require the Use of a Cane

Third and finally, the plaintiff argues that the ALJ erroneously determined that she "did not require the use of a cane" when "one of the State [a]gency physicians determined that [she] required the use of a single[-]point cane" and her "treating orthopedist, Dr. Kalyanam, reported on February 20, 2015, that [she] required the use of a cane."  Pl.'s Mem. at 9.  In response, the defendant argues that "[t]he ALJ carefully examined the record evidence and, while acknowledging that [the p]laintiff used a cane at times, properly concluded that her gait was normal on multiple occasions and the record did not consistently reflect the use of an assistive device."  Def.'s Mem. at 10 (internal quotation marks omitted).  For the following reasons, the Court concludes that the ALJ did not adequately explain her determination that the plaintiff did not require the use of a cane.

The ALJ stated the following regarding her conclusion that "the record did not consistently reflect the use of any assistive device[:]"

> Despite alleging significant functional limitations, the [plaintiff's] physical examinations did not support the level of limitation alleged. Her left leg is longer than her right[, see App. at 765], and she was noted to use a cane once in 2015 and once in 2016[, see id. at 450, 461]. However, she did not require a cane in 2014 or 2015[, see id. at 326, 328, 370, 373, 415,] and her doctor indicated on one occasion that she did not require an assistive device for ambulation[, see id. at 765]. Although she exhibited some decreased range of motion in her back, right hip, and left knee, and some antalgic gait, the [plaintiff] also reported that she can walk [three to four] long blocks. . . . Although the inconsistent information provided by the [plaintiff] may not be the result of a conscious intention to mislead, the inconsistencies nevertheless suggest that the information provided by the [plaintiff] may not be entirely reliable. The limited degree of treatment required and relatively benign examinations belie allegations of disabling symptoms or functional limitations and support a finding that the [plaintiff] is capable of a limited range of light work.

Id. at 16. This discussion reflects the existence of conflicts in the record, but it provides no explanation of the analysis that informed the ALJ's resolution of those conflicts. For example, the ALJ identifies a conflict between the fact that the plaintiff "was noted to use a cane once in 2015 and once in 2016" but "did not require a cane in 2014 or 2015[,]" id., but she provides no explanation as to why she is giving greater weight to older evidence—from 2014 and 2015—that the plaintiff did not require the use of a cane, over newer evidence—from 2015 and 2016—that the plaintiff did on several occasions require the use of a cane, see generally id. at 14–17. The ALJ also provides no correlation between her indication that "the [plaintiff] [ ] reported that she can walk [three to four] long blocks[,]" id., and her conclusion that the plaintiff would be able to perform light work, defined as requiring "standing or walking about [six] hours in an [eight]-hour workday[,]" id. at 14. See generally id. at 14–17.

The defendant argues that the "[p]laintiff failed to establish that her cane was medically required" because "her gait was normal on multiple occasions and the record did not consistently

18

reflect the use of an assistive device[.]" Def.'s Mem. at 10. However, the ALJ "must [ ] explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8P, 1996 WL 374184, at *7. The evidence before the Court—and before the ALJ—reflects an inconsistent record as to whether the plaintiff requires the use of a cane, and the ALJ failed to "explain how [this] material inconsistenc[y] . . . w[as] considered and resolved[,]" id. See App. at 16. Accordingly, the Court concludes that it must also reverse the ALJ's residual functional capacity determination as to the ALJ's determination that the plaintiff did not require the use of a cane.

B.     **The Plaintiff's Challenge to the ALJ's Determination at Steps Four and Five of 20 C.F.R. § 404.1520 that the Plaintiff Was Capable of Performing Her Past Relevant Work or Other Work in the National Economy**

The Court finally turns to the plaintiff's challenge to the ALJ's determination at steps four and five of 20 C.F.R. § 404.1520 that the plaintiff was capable of performing her past relevant work or other work in the national economy. The plaintiff argues that the ALJ's determination that she "was capable of performing her past[ ]relevant work as a mail[-]handler, cashier, and census enumerator" was "not supported by substantial evidence" because (1) the ALJ "failed to make a proper finding of fact as to the [p]laintiff's residual functional capacity[,]" Pl.'s Mem. at 10–11; (2) the ALJ's "determination that the [p]laintiff's work as a . . . mail[-]handler constituted past[ ]relevant work is not supported by substantial evidence[,]" id. at 11; and (3) the ALJ's determination that the [p]laintiff's work as a census enumerator . . . constituted past[ ]relevant work is not supported by substantial evidence[,]" id. at 12–13. In response, the defendant argues that any "error was harmless because the ALJ also found at step four that [the p]laintiff could perform her past relevant work as a cashier and at step five that she

19

could perform other work in significant numbers in the national economy[,]" Def.'s Mem. at 12—findings that the plaintiff does not challenge before this Court.

The defendant is correct, see id., that "[w]hen the [defendant's] decision evinces legal error, [ ] the court should nonetheless affirm if the error was harmless[.]" Mitchell v. Berryhill, 241 F. Supp. 3d 161, 166 (D.D.C. 2017). However, the Court has already concluded that the ALJ's residual functional capacity determination is not supported by substantial evidence and must be reversed. See supra Sections III.A.1–3. As the residual functional capacity determination is "used at step [four] of the sequential evaluation process to determine whether an individual is able to do past relevant work, and at step [five] to determine whether an individual is able to do other work," SSR 96-8p, 1996 WL 374184, at *2, the ALJ's error thereby infects her determination as to the work the plaintiff is currently able to perform and is therefore not harmless. Accordingly, for the reasons discussed above, see supra Sections III.A.1–3, the Court will reverse the ALJ's decision and remand this case to the defendant for further proceedings.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the plaintiff's motion for reversal, deny the defendant's motion for affirmance, reverse the ALJ's decision, and remand to the agency for further proceedings.

**SO ORDERED** this 28th day of July, 2022.[6]

REGGIE B. WALTON<br>
United States District Judge

---

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.

20